**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONALD JACKSON )
)
Plaintiff, )
)
v. )
)
SPINNAKER INSURANCE COMPANY, )
)
Defendant. )
)
)

Civil Action No. 22-1244
Judge Nora Barry Fischer

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Currently pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 49) in this breach of contract action.  Plaintiff's Complaint seeks coverage allegedly owed through the homeowners insurance policy (the "Policy") in effect on June 10, 2021 when the subject property (the "Property") was destroyed by fire. (Docket No. 1-4).  Defendant Insurer seeks summary judgment on Plaintiff's coverage claim on alternative grounds: (a) the Property was not Plaintiff's "residence" and thus this loss was not covered under the Policy and/or (b) the Policy coverage was rendered void by Plaintiff's misrepresentations during Defendant's investigation of said loss (violation of its "Concealment or Fraud" provision).[1]  Defendant also seeks summary judgment on Plaintiff's claim of bad faith.

---

[1] Although Defendant's Brief in Support of its motion asserts that Plaintiff made "material misrepresentations . . . in his application and/or during the investigation of the claim", Defendant clarified during oral argument and in subsequent briefing that it seeks summary judgment on grounds of material misrepresentation only as to the latter. (Docket No. 50 at 2; Docket No. 62 at 37-38) ("[F]or summary judgment purposes, we've relied upon fraud during the course of the investigation.").  It intends, however, to pursue its position as to application misrepresentations (*e.g.*, that the Property was Plaintiff's "primary residence" and neither "vacant" nor "unoccupied") at trial. (Docket No. 62 at 20-21) ("[W]hether or not [Plaintiff] had intent to deceive in his application, we recognize as a disputed fact and we have not waived that. We will argue that at trial."). *Cf. infra*, n. 4.

Upon careful consideration of the parties' submissions and the evidence of record, and for the reasons set forth below, Defendant's motion is granted as to Plaintiff's claim of bad faith and otherwise denied.

In brief, the Court observes that Defendant issued to Plaintiff, as insured, a fairly standard homeowners policy which (a) identifies the Property and (b) insures in its specified amounts and circumstances a "residence premises" defined in pertinent part as "[t]he one-family dwelling where [insured] reside[s]". (Docket No. 57-10 (Insurance Policy for Subject Property)).[2]  The Court concludes, in accordance with Pennsylvania law as interpreted and applied by the courts of this Circuit, that "residence" is itself an unambiguous term, residency was a condition precedent to Plaintiff's coverage, and the record presents material fact questions from which the factfinder(s) could reasonably conclude that the Property was Plaintiff's residence.  It further concludes that the record presents material fact questions from which the factfinder(s) could also conclude that, the vagaries and apparent inconsistencies/revisions of some of Plaintiff's representations notwithstanding, the Policy coverage was not void by fraudulent misrepresentation in the investigation (*e.g.*, by willful and knowing misrepresentation of material fact).  However, the Court concludes that the same material fact questions,[3] and the related

---

[2] The Policy's definition alternatively includes "[t]he [two- to four]-family dwelling where [insured] reside[s] in at least one of the family units" or "that part of any other 'building' where [insured] reside[s]" and which is "shown as the 'residence premises' in the Declarations".  The Court notes that the use of hyphenation in the Policy definition of residence as a "one-family" (or also a "two-, three- or four-family") dwelling and the Policy's other provisions foreclose an assertion that such language covered an insured's "*one* family dwelling" (*i.e.*, the sole and/or primary place of residence) rather than a single- (or, *e.g.*, two- to four-) family dwelling.  As the parties' briefings correctly reflect, a more restrictive policy generally clearly denotes that it covers its subject  property only as the insured's "primary residence" and that it is not intended to provide coverage for a "residence" that may be seasonal or secondary. *See also infra*, Section VI.

[3] The unusually extensive fact questions arise from the (sometimes surprising) (a) absence of supportive evidence typically provided by parties to residential insurance coverage litigation and (b) gaps and inconsistencies of record, particularly those pervading Plaintiff's multiple oral interviews and testimony.  *Cf.* Docket No. 50 at 2 (Defendant's "investigation was extensive due [in part] to Plaintiff's changing and evolving story about where he was living [and] the condition of the subject property.").

existence of reasonable cause to inquire into both (a) Plaintiff's residence at the Property and (b) his many gaps and variations/errors in memory, preclude a finding of bad faith in Defendant's investigation or denial of coverage.  An appropriate Order will follow.

## II.    PROCEDURAL BACKGROUND

Plaintiff's Complaint – filed in the Court of Common Pleas of Allegheny County on August 17, 2022 and removed by Defendant to this Court shortly thereafter – is comprised of two counts: Count I, alleging breach of contract regarding his covered loss and Count II, alleging a statutory bad faith claim pursuant to 42 Pa.C.S. § 8371.  (Docket No. 1-4).

Its core allegation is that Plaintiff is owed policy coverage for the Property, its contents, and his loss of use.  (*Id.* at ¶¶ 35-41). Defendant's Answer was filed September 8, 2022 and "significant discovery ensued".  (Docket No. 49 at ¶ 4).

Defendant's Motion for Summary Judgment and Brief in Support were filed on August 20, 2024  (Docket Nos. 49-50), followed by the parties' Brief in Opposition, Replies and Sur-Replies.  (Docket Nos. 54, 59, 60).    Defendant's Concise Statement of Material Facts and Appendix, together with Plaintiff's Counterstatement and Appendix, and the parties' further responses followed. (Docket Nos. 51-52, 55-58).  Evidentiary submissions were also provided as exhibits to several of the filings; oral argument was heard on October 25, 2024 (Docket No. 62 (Transcript)); and Defendant's motion is ripe for disposition.

## III.    FACTUAL BACKGROUND

### A.  Policy Application and Coverage Denial

Plaintiff completed Defendant's online Homeowners Insurance Application on November 17, 2020[4] and Defendant issued a Homeowners Insurance Policy at No. HPA405265900,

---

[4] The application form – completed online during the first year of the pandemic – consists of approximately two pages of fill-in-the-box basic information and another of coverage elections, together with an additional four pages

effective November 25, 2020 to November 25, 2021, for "residence premises" located at 1000 Blythedale Road, Elizabeth, Pennsylvania. The Policy covers the dwelling and other structures, personal property and loss of use. The Property, purchased sight-unseen on October 9, 2020 and conveyed by Sheriff's sale deed on November 5th, suffered a fire loss on June 10, 2021.[5] Plaintiff made a claim under the Policy and met with Defendant's claim investigator on July 31st.

By letter dated February 25, 2022, Plaintiff's claim was denied because (a) the Property did not qualify as his "residence premises", defined as "the one family dwelling where you reside", and (b) the Policy was void due to his material misrepresentations. (ECF No. 1-4, ¶¶ 3-9 and Exhibit B at pp. 102-106). More specifically, Defendant asserted that (a) Plaintiff was living in Duquesne, Pennsylvania during the relevant time period and that "sporadic visits to the property do not establish residency" and (2) even if the property were qualified as his "residence premises", Plaintiff's misrepresentations voided coverage, as:

> You initially misrepresented . . . that the property was your "primary" residence and that it was not vacant and not unoccupied. Your testimony that you had been working to renovate the property and staying there on occasion is not credible. You initially stated that you were staying at the property a couple of nights per week. You later stated that you had stayed there a total of eight nights since you

---

of policy terms. (Docket No. 1-4, Ex. B). The box indicating "Property Information – Primary or Seasonal/Secondary" was completed with the first of those two choices, and the word "Primary" was also carried down into the "Occupancy Type" box directly below it. Similarly, the box requesting "# Months Unoccupied (if seasonal/secondary)" was marked "0". These and other aspects of the application are discussed in the parties' filings. The record is unclear as to Plaintiff's understanding of the distinctions or relationships between these terms or the extent to which any clarification or direction was provided to him in the application form/process. The same is true as to his answer of "No" to six successive line item "General Information" questions, the first of which was: "Is the property under construction, vacant, unoccupied or for sale?".

A reasonable jury could conclude that Plaintiff, understanding his designation of residence choices to be Primary or Seasonal and knowing this was not his vacation home, chose Primary, and understanding that "unoccupied" was a designation intended only for Seasonal homes and/or that the Property was neither "unoccupied" nor "vacant" because he was sometimes living in/renovating it, chose "No" in response to the General Question noted above. More generally, as Defendant appears to acknowledge, a reasonable jury could conclude that any misrepresentations in Plaintiff's application were not of a nature to render the Policy void.

[5] The fire occurred the day before the wake for a son of Plaintiff's girlfriend, Tamilia Demery. That son, Robert, had been murdered eight days earlier, on June 1st.

purchased the property. The lack of electricity, lack of sewer system and lack of water use support the conclusion that the property was unoccupied. You could not have occupied the property without a permit and it appears that securing a permit was impossible because of the lack of public sewer and the lack of a septic system.

(Docket No. 50 at 4) (citing Docket No. 1-4, Ex. B).

### B.  Acquisition, Renovation, Use and Loss of the Property

As set forth in Section V, under the now applicable summary judgment standard, the Court considers the evidence in the light most favorable to the non-movant.[6]  In so doing, it neither weighs the evidence nor engages in credibility determinations.  That said:

Although the Policy was titled in his sole name, Plaintiff in fact purchased and owned the Property jointly with his girlfriend, Tamilia Demery ("Demery").[7] He did so "with the intent of making [the Property] his primary residence".  In the months following its Sheriff's sale purchase for $28,000, Plaintiff was making gradual improvements and repairs to the Property, some of which were taking longer than expected and/or revealing additional work which needed to be done.   Progress on renovations/repairs was also limited by Plaintiff's financial, employment and transportation circumstances.  During this time, Plaintiff kept some portion of his personal belongings at both (a) the Property and (b) the home at 16 Auriles Street, Duquesne, Pennsylvania, rented by Demery.[8]  He also received mail at the Property.[9]

---

[6] In addition to the citations provided in text, the Court derives these facts from Defendant's Concise Statement of Material Facts and Appendix, together with Plaintiff's Counterstatement and Appendix, and the parties' further filings, including evidentiary submissions thereto.  *See generally*, Docket Nos. 51-52, 55-58.

[7] Plaintiff and Demery combined their Covid unemployment benefit funds to jointly purchase this home, which met their criteria as one they could afford and one which was free of liens.  (Docket No. 52-1 at 7-8).

[8] Demery resided in her Auriles Street rental with some number of her children and intended to move into the Property when its condition had been improved.  Plaintiff considered the insured Property (the home which he jointly owned) to be his residence in part because he neither owned/rented another residence nor had a legal right to reside/stay in Demery's Auriles Street rental.  (Docket No. 1-4, ¶¶  18-19, 44).

Prior to moving in (and sharing some expenses) with Demery, Plaintiff shared a McKeesport residence with a former spouse.  After he moved out of that residence and into Demery's, Plaintiff kept some furniture in a storage

Over the approximately seven months between purchase/insurance of the Property and its loss to fire, Plaintiff not only spent substantial daytime hours working on its restoration (and sometimes employed others to assist him or perhaps work independently there), but also occasionally slept there.  (Docket No. 1-4, ¶¶ 12-17, 27).[10]  Because he owned no vehicle and

---

unit until he jointly purchased the Blythedale Road Property.  The items he then moved from storage to the Property included an old bedroom set, miscellaneous chairs and other furniture (the "normal stuff that would be in a house"), clothes and computer equipment.  Docket No. 52-1 at 5-6.  Plaintiff also attests to keeping variously-identified pieces of computer equipment and televisions, as well as gold and diamond jewelry, at the Property.  *See e.g., id.* at 52-1 at 11-12; 52-2 at 11-12.

[9] The mail received included Plaintiff's cell phone, banking, insurance and dog-ownership-related statements, as well as statements for the water account held in Demery's name.

[10] Plaintiff's accounts/averments regarding both the frequency/duration of daytime hours and the nights spent at the Property vary; and the utility bills (in Demery's name) and other evidence of record (including other witness testimony) fails to provide significant substantiation of (and sometimes arguably calls into question) Plaintiff's testimony as to more substantial amounts of time spent. For example, monthly utility bills reflect little use of water or electricity at the Property, and the status of its septic system is unclear.  (Heating during the winter months was assertedly provided by a full oil tank, occasional use of space heaters, and perhaps a woodburning stove. (Plaintiff's averments differ as to the latter.))  *See e.g.*, Docket No. 52-1 at 9-10.

 Although there were no kitchen appliances (*e.g.*, refrigerator, stove, microwave) at the Property, Plaintiff kept water there and occasionally brought food to eat meals there. Plaintiff's testimony regarding nights spent has ranged from "a couple nights" per week (*i.e.*, approximately eight per month) to 8-10 nights in total during the approximately seven month window. *See e.g.*, Docket No. 51 at ¶¶ 16-17 (citing Plaintiff's investigation statements that he lived with Demery at the time of the fire but also was living at the Property, staying two days a week and "trying to get the work done"); *id.* at ¶18 (citing Plaintiff's subsequent investigation statement that he stayed overnight at the property approximately eight to ten times while renovating it); *see generally* Docket No. 52 (Defendant's Appendix to CSMF).  These fact questions (and credibility determinations) are material to Plaintiff's entitlement to coverage, *e.g.*, whether the Property was Plaintiff's "residence".

Plaintiff's accounts/averments regarding (a) the nature and extent of materials purchased for and improvements or repairs made to the Property (and by whom), or (b) the personal property it contained at the time of the fire, are also varyingly imprecise/ambiguous and/or sometimes contradictory.  For example: Plaintiff recalls little of the locations from which renovation materials were obtained and, as to, *e.g.*, Ebay, Craig's List, FaceBook and salvage-type location acquisitions, provides little corroboration or documentation (*e.g.*, receipts, electronic communication records, or photographs). Plaintiff's accounts of (usually unnamed) individuals paid (usually in cash) to work at the Property (*e.g.*, a plumber, kitchen cabinet and counter installer(s)) generally lack means of further identification and evidence of transactions/payment. (For example, "Frank", who transported Plaintiff, moved purchases/materials in his truck and worked on the kitchen, is deceased.  (Docket No. 52-1 at 6, 9, 16; 52-2 at 4).) Plaintiff's initial mis-remembering of second-floor bathroom renovation work performed by Demery's son, D'Andre Thornton, was contradicted by Thornton's own testimony. Docket No. 52-12 (July 11, 2023 Deposition (succinctly recounting that the only work he performed, on his two visits to the Property, was some first-floor drywall)).  And Plaintiff's representations regarding the size, features and age of televisions/electronics in the Property at the time of loss are neither fully consistent nor fully supported by the record's relatively scant documentation of contents. These wide-ranging fact questions (and credibility determinations) are material to the Policy coverage amount, if any, due (and perhaps less directly to the determination of "residence" to the extent they inform, *e.g.*, Plaintiff's time spent at the Property).

was not licensed to drive, Plaintiff hired a jitney to take him to the Property, which cost approximately $15-20 per trip.[11]  Throughout this time, Plaintiff continued to live in, and primarily spent his nights in, Demery's Auriles Street rental.[12]  The Property and its contents were lost to fire on June 10, 2021; and the facts of Defendant's subsequent investigation(s) and denials of Plaintiff's claim are fully set forth in the parties' briefings. (Docket Nos. 49-52, 54-60).  *See also* Section II, *supra*.

## IV.    RELEVANT POLICY PROVISIONS

The provisions of the Policy include, in pertinent part:

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. You agree that the policy has been issued in reliance upon the statements and the Declarations and the application.

---

While these variances give rise to questions of material fact and credibility, their resolution is for the factfinder(s). As discussed *infra*, the Court must reject Defendant's assertions – in support of the pending motion - that Plaintiff's material statements and/or other representations/evidence during its investigation have been so vague, "unreliable and imprecise" or "unworthy of belief" as to remove those determinations from the province of the jury. *See* Section VI, *infra* (citing other "residence" insurance coverage cases in which the policy holder's representations raised significant questions of material fact and credibility); *see also* Section V at n. 16, *infra*.  *Compare* Docket No. 62 at 6-7; *id.* at 4 (Defendant's assertion that "this case has such weak implausibilities [*sic*] that it should not proceed to a jury trial"); *id.* at 39 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); Docket No. 50 at 12 ("[Plaintiff's] lack of candor and convoluted explanations concerning his alleged contact with the property are so untrustworthy and false such that no reasonable juror could possibly lend any credence to them.").

[11] Docket No. 52-2 at 7.

[12] The Court notes although Plaintiff has no driver's license, he has possessed a State ID.  The State ID first provided to the Claims Investigator was issued in January 2021, a few months after the Property's purchase, and showed his address as McKeesport.  The State ID later provided was issued in March 2023 and showed his address as the Blythedale Road property.  Plaintiff avers that he lost a previous ID, for which this was a replacement. (Docket No. 52-2 (Plaintiff's May 25, 2023 Deposition Testimony)).  *Cf.* Docket No. 52-13 (Demery's May 25, 2023 Deposition Testimony) (attesting that Demery and Plaintiff leased a residence in Hazelwood in May 2022 and still resided there as of May 2023).

**DEFINITIONS**

**9. "Insured"** means: a. You and residents of your household who are: (1) your relatives; or (2) other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**10. "Insured location"** means: a. The "residence premises": b. The part of other premises, other structures and grounds used by you as a resident; and (1) which is shown in the Declarations; or (2) which is acquired by you during the policy period for your use as a residence and reported to us within thirty (30) days of its acquisition; c. Any premises used by you in connection with a premises described in a. and b. above; d. Any part of a premises, not used for "business" and "purposes": (1) not owned by an "insured"; and (2) where an "insured" is "temporarily residing"; e. Vacant land, not used for "business" purposes, other than farm land, owned by or rented to an "insured";

**17. "Residence premises"** means: a. The one-family dwelling where you reside;

b. The two-, three- or four- family dwelling where you reside in at least one of the family units; or c. That part of any other "building" where you reside; and which is shown as the "residence premises" in the Declarations. "Residence premises" also includes other structures and grounds at that location.[13]

**18. "Temporarily residing"** means residence in a hotel, motel, vacation residence or similar facility. It does not include any residence that an "insured" has occupied, rented or leased for 60 days or longer, or that an "insured" intended to occupy for 60 days or longer.

---

[13] The Court notes that this definition of "residence premises", by insuring only (a) that dwelling in which insured resides which is (b) also the one identified in the Declarations, anticipates the possible existence of more than one dwelling in which an insured resides - as do other provisions of the Policy.

**COVERAGE PROVISIONS**

**1.** We cover: a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

**EXCLUSIONS**

**R. Concealment or Fraud:** 1. With respect to loss caused by fire, we do not provide coverage to the "insured" who has: a. Intentionally concealed or misrepresented any material fact or circumstance; b. Engaged in fraudulent conduct; or c. Made false statements; relating to this insurance.

(Docket No. 1-4, Exhibit A).

## V.    APPLICABLE STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party,[14] the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) & (c)(1)(A).[15] Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477

---

[14] *See e.g.*, *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007) (noting that the court must interpret the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor).

[15] A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).

U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof.  *Id*.  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986); *id.* at 249 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). But as the United States Supreme Court further directed: "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  Thus, in reviewing a motion for summary judgment, the court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *Isenberg v. State Farm Fire & Cas. Co.*, 604 F.Supp.3d 322, 324–25 (W.D. Pa. 2022) (quoting *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007)).[16]

---

[16] Defendant's Brief in Support provides a more extensive discussion of the standard of review, in support of its assertion that Plaintiff's evidence is too inadequate and/or flawed to merit a jury's consideration:

> [T]he Supreme Court has repeatedly stated that "[e]vidence which [is] merely colorable or not significantly probative" is not sufficient to defeat a motion for summary judgment. *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998) (citing *Liberty Lobby*, 477 U.S. at 249-250); accord *New Jersey Turnpike Auth. v. PPG Industries, Inc*., 197 F.3d 96, 108-09, 110, 112 (3d Cir. 1999); *Blackburn v. UPS*, 179 F.3d 81, 103 (3d Cir. 1999). Testimony that is "unreliable and imprecise . . . does not constitute evidence sufficient to create a genuine issue of material fact to withstand [Defendant's]

## VI.    ANALYSIS

### A.  "Residence Premises" and Relevant Factors Under Pennsylvania Law

The applicable law has been well and clearly set forth by this Court in its previous decisions.  More particularly, as to consideration of the existence of coverage in general:

> In determining whether coverage exists under the policy at issue, the Court looks to the language of that policy to ascertain the parties' intent. *Morton v. Gardner*, 488 F. Supp. 3d 200, 207 (W.D. Pa. 2020) *citing Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983); see also *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007).  In so doing, "[w]ords of 'common usage' . . . are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." *Gerow v. State Auto Prop. & Cas. Co.*, 346 F. Supp. 3d 769, 778 (W.D. Pa. 2018), *citing Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007). In addition, "courts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy." *Id., citing, Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994).  Finally, when considering definitions and terms, the Court must also determine whether a provision at issue is ambiguous.  If so, it is to be construed in favor of the insured and against the insurer. *Morton*, 488 F. Supp. 3d at 207. A term is ambiguous if there is more than one reasonable interpretation of the term. If the term is unambiguous, the Court must ascribe the plain meaning of that term. *Gerow,* 346 F. Supp. 3d at 778.

*Isenberg*, 604 F.Supp.3d at 325.

---

summary judgment motion . . . ." *New Jersey Turnpike Auth.*, 197 F.3d at 110. Testimony that is "vague and imprecise, of questionable reliability [is] therefore not sufficiently probative to create an issue for trial." *Id.* at 112. A nonmovant's beliefs and/or speculations cannot defeat summary judgment. *Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005). A "scintilla of evidence is clearly inadequate to create a genuine issue of material fact . . . ." *Blackburn*, 179 F.3d at 103. Moreover, evidence that is immaterial or irrelevant cannot defeat a motion for summary judgment. Id. at 97, 98. . . . *A fortiori,* "in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007); accord *Walter v. Pike County*, 544 F.3d 182, 193 n. 2 (3d Cir. 2008).

(Docket No. 50 at 8).  In short, the Court finds that Plaintiff's submissions (and the record) on the whole – despite their deficiencies – are not so singularly or exclusively imprecise, unreliable, speculative and/or wanting that no reasonable jury could find sufficient material facts for a verdict, in some amount, in Plaintiff's favor. *See* Section VI, *infra* (discussing analogous cases).

And as to construction of the term, and inquiry into the fact question of, "residence", this

Court  has held that:

> "Pursuant to Pennsylvania law, construction of the term 'resident' in an insurance
> policy is a matter of law." *Mu'Min v. Allstate Prop. & Cas. Ins. Co.*, Civil Action
> No. 10-7006, 2011 WL 3664301, at *9 (E.D. Pa. Aug. 17, 2011). Pennsylvania
> courts have held that the word "resident" in an insurance policy, even if
> undefined, is unambiguous. [*citing Wall Rose, supra*]. "Residence" refers to "a
> factual place of abode evidenced by a person's physical presence in a particular
> place." *In re Residence Hearing Before the Bd. of Sch. Dirs., Cumberland Valley
> Sch. Dist.*, 560 Pa. 366, 744 A.2d 1272, 1275 (2000) (citations and internal
> quotations omitted). The term "requires, 'at the minimum, some measure of
> permanency or habitual repetition.' " *Wall Rose*, 939 A.2d at 965 (quoting *Erie
> Ins. Exch. v. Weryha,* 931 A.2d 739 (Pa. Super. Ct. 2007)). "Also, '[s]ince
> resident status is a question of physical fact,' intention is not a relevant
> consideration." *Id.* (*citing Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.,* 376
> Pa.Super. 109, 545 A.2d 343, 348 (1988)); *see also Campbell [v. State Farm Fire
> and Casualty Company],* 2018 WL 3468214, at *1 [(W.D. Pa. July 18,
> 2018)] ("Plaintiff's reliance on her intention to return to the dwelling at a future
> date ... does not establish 'residence.'").

> When inquiring into residency, courts look at objective indicators "such as where
> an individual sleeps, takes her meals, receives mail, and stores personal
> possessions." *Allstate Ins. Co. v. Naskidashvili,* Civil Action No. 07-4282, 2009
> WL 399793, at *3 (E.D. Pa. Feb. 16, 2009)*; see [Chong] Chen [v. Allstate Ins.
> Co.],* 2012 WL 460416, at *6 [ (E.D. Pa Feb. 14, 2012) ]; *Mu'Min*, 2011 WL
> 3664301, at *9. "[W]hen a person actually lives in one location, and sporadically
> visits, or keeps certain personal items at, another location, it is the location where
> he lives that is his residence," not the location he sporadically visits. *Gardner* [*v.
> State Farm Fire and Cas. Co.*]*,* 544 F.3d [553] at 560 [(3d Cir. 2008)].

*Gerow v. State Auto Prop. & Cas. Co.*, 346 F. Supp. 3d 769, 779 (W.D. Pa. 2018) (quoted in

*Isenberg*, 604 F.Supp.3d at 325).

In addition, "Pennsylvania courts and federal courts within [this] Circuit applying

Pennsylvania law have agreed or at least assumed that a person is not limited to one residence."

*Isenberg*, 604 F.Supp.3d at 329 (citing *Hillmer v. Esurance Prop. & Cas. Ins. Co.*, 559

F.Supp.3d 402, 412 (E.D. Pa. 2021). *See also GEICO Cas. Co. v. Alicea*, 417 F.Supp.3d 425,

432 (W.D. Pa. 2019) ("It is certainly possible that one can have only one domicile, which as a

person's principal establishment, implies a certain unique status.  Residence though has always been regarded as something more fluid and less permanent that a domicile, and there is no reason to believe one cannot have a sufficient physical presence at more than one place to establish a residence.").  *Cf. Bloxham v. Allstate Ins. Co*., 2020 WL 6710427, at \*5 (M.D. Pa. Nov. 16, 2020) (noting that "the word 'resident' as used in the policy, without additional words of refinement, *i.e.,* permanent, legal, *etc*., [carries a] more transitory meaning" than "domicile" (a "fixed and permanent home and principal establishment")).

In summary then, under applicable law "residence" is evidenced by an insured's physical presence in the subject property and requires "some measure of permanency or habitual repetition". "Sporadically visit[ing]" is therefore distinguished from "liv[ing] in" a place. The objective indicia to be considered include: sleeping, taking meals, receiving mail and storing personal property.  Intention is expressly excluded as a relevant factor; and the possibility of more than one "residence" is clearly contemplated.[17]

## B. Material Fact Questions Exist From Which a Reasonable Jury Could Find the Property To Be the "Residence" Insured Under the Policy

As a threshold matter, to the extent Defendant suggests that Plaintiff's expressions of belief and/or intention – *e.g.*, in his application for insurance, statement of loss, and/or this litigation – that the Property was his "primary residence" render the Policy void absent a finding that the Property was in fact his primary residence, the Court must disagree. The salient fact, of course, is that the Policy does not restrict its coverage to Plaintiff's *primary* residence.  To the contrary, the Policy, *i.e.*, the operative contract, unambiguously insures the dwelling which is (a)

---

[17] Defendant may misapprehend the law's recognition of a residence which is (a) less than continuous and more than sporadic, and (b) *one of* the particular places in which an insured lives.  *See, e.g.*, Docket No. 62 at 4 ("Now, residency has been defined under Pennsylvania law as where an individual sleeps, eats, receives mail, and stores personal possessions. The residency also has to be *continuous and not sporadic*. One has to be living *in a* particular place.") (emphasis added).

Plaintiff's residence and (b) identified in the Declarations. *See* Section III, *supra*; Docket No. 50 at 1-2 (Defendant "issued a Homeowners Insurance Policy . . . for 'residence premises' located at 1000 Blythedale Road, Elizabeth, PA 15037") (citing Docket No. 1-4, ¶ 3, Exhibit A); *see also* Docket No. 60 at 1-2 (noting that Defendant cannot ask the "court to broaden the definition of a key insurance term . . . As such, primary is not a factor in the interpretation of the policy . . . ."). *Cf. Isenberg*, 604 F.Supp.3d at 324 (rejecting insurer's "implicit [argument] that a person may only have one 'residence'" in denying its motion for summary judgment on grounds that Plaintiff continued to reside in rented apartment while extensively renovating insured property).

This Court finds its most recent decision, in *Isenberg,* not only a cogent presentation of the law but also a case persuasively both analogous and distinguishable on its facts.  Isenberg, a single mother, continued to reside in an annual-lease rental apartment with her children for two years while extensively renovating a home purchased, similarly to Plaintiff's, for what she could afford (*i.e.*, $30,000, obtained from an automobile settlement).  During the interval prior to its loss by fire, Isenberg visited the property "almost daily" to do rehabilitation/renovation work. She also "ate some meals", kept "numerous" personal belongings for herself and her daughters, and "from time to time" slept there.  *Id.* at 324, 328-29. On these facts, the Court not only denied the insurer's motion for summary judgment on grounds that the property was *not* Isenberg's residence, but held on its consideration of the record that the evidence "support[ed] a finding", made "on the undisputed facts", that the property "was also her residence – albeit a second residence" under Pennsylvania law.  *Id.* at 324, 328-29.[18]

---

[18] *Cf.* Docket No. 50 at 16-17 (asserting that *Isenberg* "is not at all analogous" because "the insured was living in an apartment two minutes away and had daily contact with the property, including performance of manual labor", while Plaintiff lived a substantial distance away and, based on the evidence of utility usage, "it is inconceivable that [the Property] could have been under active renovation", leaving "no genuine issue of fact to present to a jury concerning whether the property could qualify as 'residence premises'").  *Compare, e.g.* Docket No. 62 at 19-20 (noting that Defendant introduced no evidence of an expected electricity usage correlated to Plaintiff's highly limited use of electric lighting (vs. daylight) and non-battery power tools in a property without appliances or electric heat).  *Cf.*

The Court observes that the *Isenberg* record - of plaintiff's "living in" the insured property - included both stronger objective indicia of "habitual repetition" and markedly fewer gaps/ambiguities/contradictions as to related facts than the record before this Court.[19]   In the record *sub judice*, however, the Court finds sufficient questions of material fact from which a reasonable jury could find the Property to *be* – or, in the alternative, to *not be* – the insured's residence.   It therefore denies Defendant's request for summary judgment on this basis, as other courts have done in factual circumstances similarly removed from *Isenberg*'s.   *See, e.g.*, *Bloxham v. Allstate Insur. Co.*, 2020 WL 6710427 (W.D. Pa. November 16, 2020) (denying defendant's motion for summary judgment - on basis of "residence" and/or fraudulent and material misrepresentations - in presence of substantial questions regarding evidentiary record and credibility);[20] *Allstate Insur. Co. v. Naskidashvili*, 2009 WL 399793 (E.D. Pa. Feb. 16, 2009) (denying summary judgment where "record contained evidence  . . . tending to permit a jury to

---

*Isenberg*, 604 F.Supp.3d at 327 (finding residency while noting that at time of loss two years later,  "the water had not yet been turned on at the property [but] the electricity was working and had been used by [plaintiff]").

[19] *Id.* at 327-28 (Plaintiff's aunt visited the property and observed the progress on all three floors; the record contained a "complete, detailed list of Plaintiffs' personal property located at the property and states" – *e.g.,* "cookware, flatware, china, most of her furniture, electronics, children's toys, two televisions, family picture albums, . . .").

[20] In *Bloxham,* plaintiff's complaint alleged that he had been living at the insured property for more than ten years, kept his personal belongings and slept there, and was present every day "making ongoing and continuous repairs and renovations . . . ."  2020 WL 6710427, at *2.  Plaintiff varyingly testified that he stayed there one to two weeks per month. In contrast, the post-fire investigator reported a "lack of furnishing" and other personal possessions, and the presence of "a large amount of graffiti" in/on the property, as well as an overgrowth of weeds.  Affiliates of the church across the street had not observed activity at or anyone living in the property for many years and believed it to be vacant/abandoned, as did the mailman.  *Id.* at **3-4. Plaintiff's mother testified that he lived with her for 10 years, and at the time of loss no one had lived in the property for seven years; but she also testified that plaintiff stayed at the property "often" and was there when not with her.  *Id.* at *6.  The Court noted (a) some plausible explanations for some contradictions in testimony, and (b) objective indicia of residence, including that plaintiff received mail at the property; listed it on his tax filings and driver's license; kept clothes, some furniture and a bed there; and was the only one with keys to the property.  *Id.* at *7.  It found "the record contain[ed] evidence sufficient for a reasonable juror to conclude that plaintiff resided at the property."  *Id.* at *5.

reach [opposite] conclusions" such that "court [could] not find as a matter of law that [visiting elder relative on sixth-month visa] was or was not a resident" of insured property).[21]

In asserting that no "reasonable interpretation of the facts could find" that the Property was anyone's "residence at the time of the fire" (Docket No. 62 at 5), Defendant places significant reliance on this Court's 2018 decision in *Gerow,* 346 F. Supp. 3d 769, which, as cited *supra*, informed the analysis provided in *Isenberg* a few years later.  The *Gerow* Court, however, concluded that a home which the insureds had left for another was not a residence at the time of loss. More specifically, the Gerow family relocated from Pennsylvania to Connecticut to live with a recently-widowed grandmother, and the father spent his time between that residence and his apartment in Washington, D.C., his place of employment.  The Court found that the latter's "visits" to the insured property – which remained serviced by utilities and otherwise unoccupied - were insufficient to "residence" for homeowners insurance purposes.  *Id.* at 780-81.[22]

The *Isenberg* Court distinguished *Gerow* and other cases finding for defendant where "the policyholders were leaving or had already left the insured properties for another property" and were "visiting" the former residence, from circumstances where "the opposite is true", *i.e.*, the policyholder had habitual contact with the insured premises "for the express purpose of completing renovations . . . so the insured's family could move into [it] on a full-time basis."

---

[21] *Id.* at **3-5 (citing *Quincy Mut. Fire Ins. Co. v. Clyman*, 910 F.Supp. 230 (E.D. Pa. 1996) (finding jury question of "residence" where college student at parents' home for holidays was injured in fall). In *Naskidashvili*, the insured homeowner's mother sustained serious personal injuries in a fall and insurer denied coverage for bodily injury under the policy's "guest medical protection" provision.

[22] In so holding, the Court observed that Gerow visited the former residence two to four times a month, "sometimes simply [went] into the house to check on it" and continued on his way to Connecticut or D.C., and sometimes also visited the local country club while there.  And it noted that much of Plaintiffs' furniture and property was moved to Connecticut.  Finally, the Court observed that Plaintiffs' intention to reside at the insured property again in the future was irrelevant, and their identification of it as "home" was "in itself not sufficient to establish residency."  *Id.* (citing *Wall Rose*, 939 A.2d at 962).

*Isenberg*, 604 F.Supp.3d at 329.[23]    The Court also observes and concurs in the distinction made in these cases between "sporadic visits", on one hand, and the "presence", "personal contacts" and/or "living"/"spending time" in a physical place denoted by an insured's being there with habitual purpose (such as renovation work), on the other.  *See Gerow*, 346 F.Supp.3d at 780.[24]

Finally, the Court notes that the evidence regarding the number of nights Plaintiff spent at the Property and his maintenance of sleep accommodations there are indicia to be considered, together with others, by the factfinder(s).  They lend support to, but do not in isolation compel, a conclusion.  *Compare* Docket No. 50 at 15 (asserting that "one of the most critical factors in determining residency is how often the insured spent the night at the subject premises. Courts have commonly found that those who sleep at a place no more than once a week or so are not residents. Therefore, even if it could be true that Plaintiff had spent eight to ten nights at the property from November 2020 to June 2021, the residency condition cannot be established as a matter of law.") (citing *Chong Chen*, distinguished at n. 23, *supra*; *GEICO Cas. Co. v. Alicea*, 416 F.Supp.3d 425, 433 (W.D. Pa. 2019)) *with Wall Rose*, 939 A.2d at 965 (holding that determination of "whether an individual 'physically lives' in a particular place so as to 'reside' there", requires "examin[ing] the facts of the case and com[ing] to a common-sense decision").[25]

---

[23] *See also,* as cited in *Isenberg*: *Gardner v. State Farm Fire and Cas. Co*., 544 F.3d 553 (3d Cir. 2008) (where property was being used as a rental (rather than insured's residence) and insured had moved in with girlfriend, coverage for injury to renter's guest was disallowed under express policy exclusion); *Chong Chen v. Allstate Ins. Co*., 2012 WL 460416 (E.D. Pa. Feb. 14, 2012) (granting defendant summary judgment where one-family three bedroom Philadelphia property damaged by fire was being used as a rental for multiple (transient) tenants and treated as a business by insured, who "gave multiple conflicting statements" about his time at property (which was "at most, only . . . on weekends") while appearing to reside and pay taxes in Maryland); *Naskidashvili*, 2009 WL 399793.

[24] *Cf.* Docket No. 50 at 16 (asserting that "Plaintiff's claim that he allegedly frequented the property, even if it could be proven, also fails to satisfy the [Policy] condition of residency. Courts have consistently found that visiting a property is not the same as residing at a property . . . .").

[25] *See also Bloxham*, 2020 WL 6710427, at *6 ("Important indicators of residence are that the person: (1) stays overnight for a significant amount of time and on a consistent basis, even if not full-time; and (2) has a space devoted solely to his or her sleep.") (citing *Lebanon Mut. Ins. Co. v. Lopresti*, 2013 WL 11256828, at *3 (Pa. Super.

In sum, it is not for the Court to weigh the evidence or adjudge credibility. Rather "if a reasonable juror could look at the record and decide that [P]laintiff resided at the Property, then summary judgment on the issue of residence must fail." *Bloxham*, 2020 WL 6710427, *7. The Court concludes - based upon (a) the above case law, (b) the unambiguous meaning and multiple objective indicia of "residence" to be examined under Pennsylvania law, and (c) the competing evidence in the record - that there are genuine disputes of material fact as to whether the Blythedale Road property was a residence of the insured.[26] Defendant's motion on this ground is therefore denied.

### C. Defendant Has Failed to Evidence Entitlement to Summary Judgment on Grounds of Fraudulent Misrepresentation in the Investigation

Defendant's second ground for summary judgment on Count I, breach of contract, is that its duty to cover losses was rendered void by Plaintiff's misrepresentations of material fact. As Defendant notes, a violation of the "concealment or fraud" provision of an insurance policy bars an insured's recovery under that policy. (Docket No. 50 at 9) (citing *State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc*., 533 F. Supp. 3d 268, 273 (E.D. Pa. 2021), aff'd, 2022 WL 17076035 (3d Cir. Nov. 18, 2022); *Lavin v. Fireman's Ins. Co. of Newark, N.J.*, 1992 WL 157691, at *2 (E.D. Pa. June 29, 1992)). And Defendant must prove a violation of its concealment or fraud condition only by a preponderance of the evidence. (*Id*.) (citing *Am. Nat'l Prop. & Cas. Co. v. Felix*, 2018 WL 1747697, at *9 (W.D. Pa. Apr. 11, 2018)).

---

2013) (adopting the holding that "sleeping on a couch, rather than on one's own bed in one's own bedroom, is more indicative of a temporary arrangement for convenience than residence," even if . . . every night)). *Cf.* Docket No. No. 51 at 18 (citing Plaintiff's investigation statement that he had a dresser and wooden bed frame with an air mattress for overnights at the property).

[26] *Compare, e.g.*, *Gerow*, 346 F.Supp.3d at 780 (finding it clear that there was no genuine dispute of material fact that the insured was not a resident of the subject property); *Isenberg*, 604 F.Supp.3d at 328-29 ((finding it clear that there was no genuine dispute of material fact that the insured was not a resident of the subject property).

Be that as it may, as the District Court for the Middle District of Pennsylvania has explained:

> For an insurance carrier to avoid coverage due to misrepresentation, the insurer must establish that the insured's representation: (1) was false, (2) was made with the knowledge that the representation was false when made or was made in bad faith, and (3) was material to the risk being insured. *New York Life Insurance Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir. 1991). The insurer must show that the insured made the misrepresentation with a deliberate intent to deceive. *Donaldson v. Farm Bureau Mutual Automobile Insurance Co.*, 14 A.2d 117, 118 (Pa. 1940).

*Bloxham*, 2020 WL 6710427, at *8.

As indicated in Section III, *supra*, Plaintiff's representation that the Property was his "primary" residence, in an application form or elsewhere, cannot support summary judgment in Defendant's favor on a basis of fraudulent misrepresentation under a policy unambiguously insuring his "residence". *See* n. 4, *supra*. Nor are Defendant's invocations of similar misrepresentations – *e.g.*, that Plaintiff submitted an August 23, 2021 proof of loss form falsely averring that that the Property was occupied as primary at the time of loss, while knowing it was not his "number one" or "main" residence - material to its coverage obligations under the plain terms of the Policy issued. (Docket No. 50 at 10). *See* Section VI(B), *supra*.[27] Moreover, as to Plaintiff's "residence", Defendant has not established that Plaintiff made any statements that he resided at the Property with knowledge of their falsity or with a deliberate intent to deceive. The

---

[27] The Court also notes that the Proof of Loss form - comprised as it is of lines sized for one-word answers where an explanation might be called for, reading as a form intended to be completed by the insurer, and appearing to require yet failing to provide direction – reflects such mistaken responses by the preparer as, e.g.: "At the time of the loss the interest of your insured in the property was __" completed in writing as "NA".  The objected-to answer of "Primary" is written in reply to the question: "The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: ___".  (Docket No. 52-1, SIC-0432). See also Docket No. 51 at ¶ 12.

record is unclear as to Plaintiff's appreciation of the meaning of "residence" in the insurance coverage context or of the import of his statements. [28]

Other alleged misstatements (*e.g.*, vagaries, inconsistencies/contradictions, or statements of questionable credibility) of Plaintiff's evidentiary record cited by Defendant in support of its allegation of fraudulent misrepresentation (*e.g.*, those relating to the amount of time/number of nights spent at the Property; monies spent/improvements made; septic system or required permits; utility usage/other indicia of presence) simply present material fact questions for the jury in its determinations of the existence and amounts (if any) of coverage due. *See* Section VI(B), *supra*. These questions, like those of whether Plaintiff resided at the Property and Plaintiff's credibility more generally, are open to plausibly differing conclusions and thus necessarily remain for the factfinder(s).[29] *Cf.* Section III, n. 10, *supra*.

### D.  Plaintiff Has Failed to Evidence a Maintainable Claim of Bad Faith

Under Pennsylvania's bad faith statute, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court may take various actions, including awarding interest, punitive damages, and costs and attorney's fees to the insured. 42 Pa. Cons. Stat. § 8371. To recover, a plaintiff must "present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in

---

[28] The record reflects (among other things) Plaintiff's limited education and employment, lack of sophistication, and first-time buyer status. *See, e.g.*, Docket No. 52-1 at 3-4  (Plaintiff graduated from Carrick High School in the mid-1990s and at the time of his 2022 deposition had last been employed (for six to seven months) as a warehouse worker, in approximately 2017 or 2018); *id.* at 4 (Plaintiff previously lived for various intervals with a friend, spouse and girlfriend(s)).

[29] *Compare, e.g.* Docket No. 50 at 10 ("[Plaintiff] knew that no water and barely any electricity had been used in months, and he knew there were no appliances at the property and it had no sewer system.") *with* Docket No. 60 at 2-5 (canvassing multiple statements made by Plaintiff during multiple interviews with Defendant's investigator(s)/in this action - on which Defendant appears to rely as material and fraudulent misrepresentations - and identifying them as, *e.g.*, neither "evasive" nor "definitive" and/or as essentially imperfect attempts at honesty).

denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997).[30]

> In the insurance context, bad faith denotes a "frivolous or unfounded" refusal to pay policy proceeds, which imports a dishonest purpose and a breach of a known duty, such as good faith and fair dealing. *Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 751 (3d Cir.1994) (quotations omitted). While mere negligence or bad judgment are insufficient, a showing of reckless disregard will suffice to establish bad faith. *3039 B Street Assoc. Inc. v. Lexington Ins. Co.,* 740 F.Supp.2d 671, 677 (E.D.Pa.2010). "[I]n order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by 'the stringent level of clear and convincing evidence,' that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness." *Id.* at 678.

*Mu'Min*, 2011 WL 3664301, at *15.

Here, Plaintiff's bad faith claim cannot get past the first element – the absence of a reasonable basis for denying coverage; to the contrary, the record affirmatively demonstrates a highly reasonable basis for Defendant's actions. *See Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021) ("[A]ll that is needed to defeat a claim of bad faith under § 8371 is evidence of a reasonable basis for the insurer's actions or inaction."); *Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 n.3 (E.D. Pa. 1998), aff'd, 172 F.3d 860 (3d Cir. 1998)). It is, as a matter of law, not bad faith for an insurer to conduct a thorough investigation into a questionable claim or to litigate legitimate issues of coverage. *See Gerow*, 346 F.Supp.3d at 785 (granting summary judgment for insurer where its denial of coverage was not in bad faith under Pennsylvania law; policy required insureds to reside at the property and insurer reasonably concluded, after an investigation, that they did not). *See also,* Docket No. 50 at 17-19.

---

[30] The "clear and convincing" standard applies in opposing summary judgment as well. (Docket No. 50 at 17-18) (citing *Greco v. The Paul Revere Life Ins. Co*., 1999 WL 95717, *7- 9 (E.D. Pa. Jan. 12, 1999); *Solano-Sanchez v. State Farm Mut. Auto Ins. Co*., 646 F. Supp. 3d 610, 621 (E.D. Pa. Dec. 16, 2022)).

**VII.    CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment (Docket No. 49) is GRANTED as to Count II, Plaintiff's claim for bad faith pursuant to 42 Pa.C.S. § 8371, and otherwise DENIED.  An appropriate Order follows.


Dated:  January 28, 2025


<div style="margin-left:50%">

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

</div>

cc/ecf:  All counsel of record.